**NOT RECOMMENDED FOR PUBLICATION**

File Name: 12a0227n.06

**FILED**

**Feb 27, 2012**

LEONARD GREEN, Clerk

No. 10-5453

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNIFORM MASTERS, aka Mechanics Laundry, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | **ON APPEAL** FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| MCKESSON CORPORATION, | ) | WESTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE:     MERRITT and COOK, Circuit Judges; COX, District Judge[*]

**MERRITT, Circuit Judge.**  In this diversity case, Magistrate Judge Diane Vescovo tried the issues without a jury by consent of the parties and ruled that the defendant, McKesson Corporation, had not breached its contract with plaintiff, Uniform Masters, for the rental of employee uniforms and clothing but had properly terminated the contract in accordance with its terms because plaintiff had furnished dirty uniforms.  There are three basic issues on appeal:  (1) whether the Magistrate Judge should have recused herself from the case under 28 U.S.C. § 455; (2) whether the evidence supported the verdict; and (3) whether plaintiff was entitled to an allowance under the contract for the depreciation in the value of the rented clothing.

---

[*]The Honorable Sean F. Cox, United States District Judge for the Eastern District of Michigan, sitting by designation.

## RECUSAL

Except for the fact that plaintiff expressly and specifically waived recusal, the Magistrate

Judge may well have been required to recuse herself under § 455 both because her stepson works

for the law firm representing defendant and because her husband was previously represented by an

insurance company who hired one of the defendant's lawyers to represent her husband during a two-

month period shortly before this case was tried. The problem with this assignment of error, however,

is that the Magistrate Judge fully disclosed all of the facts concerning the conflict of interest and

plaintiff waived the conflict of interest. The Magistrate Judge accepted the waiver. Neither of the

two conflicts constitutes mandatory, non-waivable conflict requiring recusal. Since the plaintiff

waived the issue and stated in open court that it did not seek recusal, the issue was not preserved for

appeal. Plaintiff invited the court to rule as it did.

## THE CONTRACT

McKesson, as a pharmaceutical repackaging facility, was governed by an FDA regulation,

21 C.F.R. 211.28, as follows:

> Personnel engaged in the manufacture, processing, packing, or holding of a drug
> product shall wear clean clothing appropriate for the duties they perform. Protective
> apparel, such as head, face, hand, and arm coverings shall be worn as necessary to
> protect drug products from contamination.

The parties entered into a two-year contract in 2002, and a new agreement in 2005, as found

by the Magistrate Judge:

> Uniform Masters and McKesson reached an agreement in 2005 to enter into a new
> agreement to replace the Original Agreement. On or around September 2, 2005,
> McKesson and Uniform Masters entered into the Service Rental Agreement which
> was prepared by Uniform Masters. (Ex. 1.) Under the Service Rental Agreement,

> Uniform Masters was to provide lab coats, floor mats, and other items ("Rental Articles") to McKesson for a period of sixty (60) months from the date of first delivery. The first delivery was made on or about October 24, 2005.
> . . . .

The parties agree that the new agreement had a cancellation clause as follows:

> Should Customer [McKesson] be dissatisfied with the service of Supplier, Customer may immediately give written notice via registered mail of the reasons to Supplier. If after 60 days the supplier fails to correct the problem, Customer may terminate this agreement by giving Supplier 30 days written notice of cancellation.

McKesson gave notice under this clause of cancellation because it concluded that the plaintiff was delivering dirty lab coats and other items to it on a weekly basis and had not remedied the breach after notice both in writing and orally in conversations between officials of the two companies. The issue for trial before the Magistrate Judge was whether plaintiff had continued to deliver dirty uniforms and other items after notice. Each side called witnesses, and the Magistrate Judge made detailed findings of fact. She concluded, based on photographs showing dirty lab coats and the unrebutted testimony of Dale Barnes, the operations manager for McKesson, and John Tate, the assistant purchasing agent for McKesson, that the plaintiff continued to deliver unacceptable coats after notice. We do not find the findings of fact to be clearly erroneous. The testimony of Barnes and Tate supports the verdict.

## DAMAGES

As to the failure of the Magistrate Judge to assess damages correctly, the complete statement of plaintiff-appellant in its brief on the subject is as follows:

**C.    Whether the Trial court erred by requiring the plaintiff to utilize an inappropriate method of proving damages.**

The trial court erred in ruling that the plaintiff failed to correctly utilize an appropriate method of proving damages.

No objection was interposed by the defendant/appellee to the numbers and the method used by the plaintiff and were therefore waived. The numbers and method utilized were clearly considered as usual in the industry, consistent with the testimony of the President of the plaintiff (See Appendix #5, 56), who was not cross examined on said testimony. Clearly, the trial judge attempted to impeach the testimony of the appellee/plaintiff's president. That is inappropriate conduct.

Without more, it is difficult to follow plaintiff's argument. In light of the failure of plaintiff to itemize or explain with specificity a coherent theory of its damages, we agree with the Magistrate Judge that any damages suffered by plaintiff are too indefinite and speculative to justify an award:

The remaining question is whether McKesson is obligated, pursuant to the two Additions to Current Garment Agreement, to repurchase the special order garments upon cancellation of the Service Rental Agreement, and, if so, the cost of repurchase. The two "Additions" require McKesson to purchase the special order garments if McKesson "terminates or reduces service." McKesson argues that Paragraph 4 of the Service Rental Agreement controls which requires McKesson to only pay for rental articles not returned to Uniform Masters at the time any service is discontinued. Because McKesson returned all the lab coats in usable condition, it contends it owes Uniform Masters nothing.
. . . .
McKesson argues that the invoice dated September 3, 2007 does not accurately reflect the true depreciated cost of the special ordered garments because the Additions require Uniform Masters to depreciate each item individually at the rate of 2.5% per month. The court agrees. A thirty percent depreciation on every lab coat is equivalent to a 24 month depreciation of every lab coat at 2.5% per month, which means that every lab coat was two years old. This is inconsistent with the testimony of Cain who testified that Uniform Masters replaced a third of the McKesson's lab coats each year. Without additional information, any award of damages would be speculative. Because Uniform Masters has failed to prove damages with specificity, the court declines to award damages.

We agree that the plaintiff's theory and explanation of damages is too incoherent to justify an award.

Accordingly, the judgment of the Magistrate Judge is affirmed.